UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **HAROLD ROSBOTTOM, JR.** | **CIVIL ACTION NO. 15-758** |
| **VERSUS** | **JUDGE ELIZABETH ERNY FOOTE** |
| **GERALD SCHIFF AND LESLIE FOX** | **MAGISTRATE JUDGE HORNSBY** |

### MEMORANDUM RULING

Before the Court is an appeal of two rulings in a bankruptcy adversary proceeding by the debtor and defendant below, Harold Rosbottom Jr. ("Rosbottom"). Record Document 1. The plaintiffs in the adversary proceeding, bankruptcy trustee Gerald Schiff ("Schiff") and Rosbottom's former spouse, Leslie Fox ("Fox"), sought a declaration that a condominium held in trust is part of Rosbottom's bankruptcy estate because the trust was not validly formed and therefore never existed. The bankruptcy court granted the plaintiffs' motion for summary judgment and denied Rosbottom's 12(b)(7) motion to dismiss. For the reasons announced below, the Court reverses summary judgment, affirms 12(b)(7) dismissal, and remands for further proceedings.

**I.    Factual and Procedural Background**

Rosbottom filed for Chapter 11 bankruptcy in 2009. Irregularities in his bankruptcy filings soon became apparent, prompting the bankruptcy court to appoint Schiff as the Chapter 11 trustee. Eventually, Rosbottom was convicted for conspiracy to commit bankruptcy fraud, illegally transferring and concealing assets, and false oath. Rosbottom

is now incarcerated and represents himself in this appeal pro se. Despite these criminal proceedings, Chapter 11 reorganization proceeded and, after the bankruptcy court confirmed Schiff's reorganization plan, Schiff and Fox filed this adversary proceeding. The suit sought a declaratory judgment that a condominium in Dallas belonged to the bankruptcy estate, rather than a trust, because the transactions purportedly creating the trust violated Louisiana community property law, thereby depriving them of any effect.

Prior to any of the conduct that gave rise to the actions described above, Rosbottom was a businessman who resided with Fox (then his wife) and their two children at a home he and Fox owned as community property on 458 Railsback Street in Shreveport (the "Railsback Property"). On January 7, 1999, Rosbottom and Fox executed four instruments purporting to transfer each of their respective community interests in the Railsback Property to separate trusts of which they were both trustees. The four instruments consist of two mirroring pairs of authentic acts under Louisiana law: one pair created and governs the trusts and the other pair purported to donate Rosbottom's and Fox's respective interests in the Railsback Property to those trusts. The four instruments were dated on the same date, witnessed by the same witnesses, and notarized by the same notary, giving rise to the presumption that the documents were executed simultaneously.[1]

---

[1] Although the instrument creating and governing one of the trusts (the "Fox Trust Instrument") is not part of the record, there is sufficient evidence in the record for the Court to find that it existed and that it mirrored the instrument creating and governing the other trust (the "Rosbottom Trust Instrument"). Rosbottom argued below and to this Court that the instruments creating and governing the trusts mirror each other. But Rosbottom never offered this information in an affidavit or other form of competent summary judgment evidence, instead relying solely on copies of the relevant instruments to oppose summary judgment. Consequently, Rosbottom's

The two trusts identified by the trust-creation acts are the Harold Rosbottom Louisiana Trust #1 (the "Rosbottom Trust") and the Leslie Fox Rosbottom Louisiana Trust #1 (the "Fox Trust"). Record Documents 11, p. 10, and 15-1, pp. 1-18. Both are irrevocable Qualified Personal Residence Trusts ("QPRT"), an IRS designation for a trust the property of which is exempt from estate and gift taxes because it is limited to a personal residence. See 26 U.S.C. § 2702 (2012); 26 C.F.R. § 25.2702–5 (2015). In the instrument creating and governing the Rosbottom Trust (the "Rosbottom Trust Instrument"), Rosbottom "transfers property to the Trustees described on Schedule A." Record Document 15-1, p. 1. Schedule A, in turn, describes the Railsback Property. Id. at 18. The instrument names Rosbottom as the settlor and both Rosbottom and Fox as the trustees. Id. at 10. The term of the trust is the lesser of twenty years or the death of the settlor (Rosbottom). Id. at 1. If the trust terminates by the passing of twenty years, the trust property passes to another trust the beneficiaries of which are Rosbottom and Fox's children or their descendants. Id. at 6-8. If the trust terminates by the death of Rosbottom, then the property passes to Rosbottom's estate. Id. at 6. Although the instrument grants the trustees wide powers, including the powers to distribute trust

---

descriptions of the Fox Trust Instrument are not in themselves competent summary judgment evidence that the Court may consider. However, the bankruptcy court did find that there "was no distinction between how [the 1999 Rosbottom and Fox] transactions were done," strongly suggesting that the Fox Trust Instrument mirrors the Rosbottom Trust Instrument. Record Document 6, p. 41. Neither Schiff nor Fox have contested this description. Because it must construe all facts *and inferences* in the light most favorable to the non-movant, Jenkins v. C.R.E.S. Mgmt., L.L.C., 811 F.3d 753, 756 (5th Cir. 2016), the Court construes Rosbottom's description of the Fox Trust Instrument as a fair interpretation of the bankruptcy court's finding and adopts it as its own.

property to the children and sell real trust property, the instrument, in keeping with its purpose of creating a QPRT, prohibits the trustees from selling real trust property back to the settlor or any entity controlled by the settlor yet requires the trustees to distribute all income to the settlor. Id. at 3, 11. Rosbottom signed the instrument as settlor and trustee, and Fox signed it as trustee. The instrument creating the Fox Trust (the "Fox Trust Instrument") mirrors the Rosbottom Trust Instrument–it creates a QPRT over the Railsback Property, names Fox as the settlor and trustee and Rosbottom as the other trustee, and is signed by Fox in her capacity as settlor and trustee and Rosbottom in his capacity as trustee.[2] Record Document 11, p. 10.

The donations also mirror each other. Rosbottom's donation gives the Rosbottom Trust his "undivided one half interest in and to the property described on Exhibit A." Record Document 15-1, p. 21. Exhibit A again describes the Railsback Property. Id. at 22. Rosbottom signed his donation twice, once on behalf of himself and once on behalf of the Rosbottom Trust as a trustee. Id. at 21. Fox signed Rosbottom's donation only on behalf of the Rosbottom Trust as its other trustee. Id. Fox's donation gave the Fox Trust her undivided one-half interest in the Railsback Property. Record Document 4-1, pp. 36-37. She too signed her donation twice–once on behalf of herself and once on behalf of the Fox Trust–while Rosbottom signed it on behalf of the Fox Trust. Id. at 36.

In 2005, Rosbottom and Fox listed the Railsback Property for sale. Before closing,

---

[2] Presumably, the fact that both the Rosbottom and Fox Trust Instruments claim ownership of the same Railsback Property means that if the trusts were validly formed, then the two trusts owned the property equally as co-owners. No party raises this issue and it is not before the Court.

an attorney involved in securing title insurance for the buyer issued a letter dated March 17, 2005, indicating that there was "a strong argument" that Rosbottom's and Fox's donations were relative nullities because they violated the requirement under Louisiana community property law that both spouses consent to the conveyance of community property. Id. at 140. The attorney therefore conditioned his blessing of the sale on Fox and Rosbottom signing the sale deed in their individual capacities. Id. When the sale of the Railsback Property closed on April 15 of that year at a price of $1,850,000, Rosbottom and Fox signed the sale deed on behalf of the Rosbottom and Fox Trusts as sellers and on behalf of themselves as "intervenors" to "ratify, confirm and adopt this Cash Sale Deed and convey any interest they may have in the foregoing property to [the buyers] under the same terms, conditions and limitations as sellers." Id. at 109-11. Rosbottom and Fox split the proceeds from the sale of the Railsback Property in half, with each half share deposited into bank accounts for the Rosbottom and Fox Trusts, respectively. Record Document 6, p. 9-10, 13, 37.

In July, Fox filed for divorce in Dallas, where she and Rosbottom had both recently moved. Record Document 4-1, p. 4. Not long thereafter, Rosbottom purchased a condominium in The Vendome, a luxury condominium tower in Dallas, for $1.9 million (the "Vendome Property"). To pay for the condominium, Rosbottom executed a promissory note for $995,000 and applied $873,169 in cash from the Rosbottom Trust bank account to the remaining balance due. Id. at 115, 118. Although the sale deed initially transferred the Vendome Property to Rosbottom "as his sole and separate property," Rosbottom later

deeded the property to the Rosbottom Trust.[3] Id. at 123. Fox also used part of the proceeds from the sale of the Railsback Property to purchase a residence in Dallas (the "Normandy Property"). Record Document 6, pp. 9-10, 37. Schiff apparently treated the Normandy Property as part of Rosbottom's bankruptcy estate but, because it became a net liability, his only actions with respect to the property were to coordinate with Fox and the property's mortgagees for a short sale that relieved Rosbottom's bankruptcy estate of any liability stemming from the property. Id. at 9-10.

Thus, as the ostensible property of the Rosbottom Trust, the Vendome Property was undisturbed by Rosbottom's divorce and bankruptcy proceedings until December 23, 2013, when Schiff and Fox filed this adversary action.[4] Record Document 4-1, pp. 1-2. Their complaint sought a declaratory judgment that the Vendome Property belonged to the bankruptcy estate under 11 U.S.C. § 541 because it was the property of the Rosbottom-Fox community, not the Rosbottom Trust. Id. at 7-10. They asserted that the 1999 donations had no effect because they violated article 2337 of the Louisiana Civil Code, which prohibits a spouse subject to a community property regime from alienating, encumbering, or leasing his undivided interest in any community property. Id. Without any valid receipt of property, the argument continued, the Rosbottom and Fox Trusts were

---

[3] The question of whether this act violated the terms of the Rosbottom Trust is not before the Court.

[4] According to Schiff, the Plaintiffs did not seek to bring the Vendome Property into the bankruptcy estate sooner because a sagging Dallas real estate market dragged the Vendome Property underwater as a net liability until 2013–much as it had done to the Normandy Property. Record Document 6, p. 26-27.

from their inception lacking a *res*, which in turn prevented them from ever existing. Id. Both the Railsback Property and the proceeds from its sale therefore remained community property. Further, as Texas is also a community property state, the 2005 transactions surrounding the Vendome Property amounted to nothing more than the reshuffling of community assets and liabilities: Rosbottom purchased the Vendome Property partially with community assets (half of the proceeds from the sale of the Railsback Property) and partially with community debt (the remaining required financing), and neither his notation in the sale deed that the Vendome Property was his sole property nor his later attempt to transfer the Vendome Property to a nonexistent trust disturbed the property's status as community property. Id. Plaintiffs finally contended that not only is community property part of Rosbottom's bankruptcy estate, see 11 U.S.C. § 541(a)(2), but the bankruptcy reorganization plan, in conjunction with the final divorce decree issued in 2013, transfers that community property to Fox. Record Document 4-1, pp. 7, 134-37, 141-44.

Rosbottom moved to dismiss the Plaintiffs' adversary proceeding pursuant to Federal Rule of Procedure 12(b)(7), arguing that his children, as beneficiaries of the Rosbottom Trust, were required parties under Federal Rule of Civil Procedure 19.[5] Id. at 72-76. The Plaintiffs in turn moved for summary judgment, asserting that the pertinent donation, trust, and sale instruments foreclosed any dispute of the facts material to the argument that the Vendome Property belongs to Rosbottom's bankruptcy estate. Id. at 80-85.

---

[5] Although Rosbottom did not identify any Federal Rule of Civil Procedure governing his motion to dismiss, the Court interprets the motion as filed pursuant to Rule 12(b)(7) because it sought dismissal for a failure to join a party under Rule 19. See Fed. R. Civ. P. 12(b)(7).

Based on the assertion that the Rosbottom Trust is nonexistent, the summary judgment motion also argued that Rosbottom's motion to dismiss lacked merit because his children have no interest in a trust if it does not exist. Id. at 158-59, 185-86. Rosbottom also filed a counterclaim against Fox for fraud, misrepresentation, concealment, and suppression. Record Document 4-2, pp. 3-7. The claim asserts that Fox failed to disclose her alleged reliance on the Fox Trust in holding half of the proceeds from the Railsback Property sale and later using those proceeds to help purchase the Normandy Property. Id.

At oral argument, the bankruptcy court denied Rosbottom's motion to dismiss, granted the Plaintiffs' motion for summary judgment, and abstained from addressing Rosbottom's counterclaim. Record Document 6, p. 5. The court held that Rosbottom's 1999 donation violated article 2337 of the Louisiana Civil Code and as such was an absolute nullity under Louisiana law. Id. at 11-12, 36-39. The court found that although the donations and trust creation instruments were executed simultaneously and had a common purpose, they nonetheless ran afoul of article 2337 because (1) Rosbottom and Fox did not both sign each donation in their individual capacities, (2) they attempted to transfer their respective interests in the Railsback Property to separate trusts rather than a single trust, and (3) they had not terminated the community prior to their attempted donations. Id. at 31-32, 35-37. Having violated article 2337, the donations were an absolute nullity according to the court, meaning they were without effect *ab initio*. As a consequence, the court not only found that the trust never existed, but also that Fox's subsequent reliance on the validity of the Fox Trust in purchasing the Normandy Property

was irrelevant to the legality of the trusts' creation. Id. at 35-36.

The bankruptcy court also held that Rosbottom and Fox's children were not required parties under Rule 19 because (1) they were contingent beneficiaries of the Rosbottom Trust and (2) there existed no trust in which the children could have an interest. Id. at 19-20. According to the court, the children were contingent beneficiaries because the only beneficiary of the Rosbottom Trust during its initial term was Rosbottom–his children did not become beneficiaries until that term expired. Id. The court reasoned that as contingent beneficiaries the children would have no rights to assert in this suit if the court were to join them. Adopting the Plaintiffs' rationale regarding Rule 19, the court also found that in light of the ineffectual Railsback Property donation, there existed no trust in which the children could take an interest. Id. at 21.

The bankruptcy court issued a judgment declaring the Vendome Property as part of Rosbottom's bankruptcy estate. Record Document 1-1, pp. 1-5. In light of Rosbottom's outstanding counterclaim, it also certified its rulings from the hearing as a final judgment pursuant to Federal Rule of Civil Procedure 54(b). Record Document 4-2, pp. 32-39. This appeal followed. Record Document 1.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), which authorizes a district court to review final orders, judgments, and decrees of a United States Bankruptcy Court. 28 U.S.C. § 158. When sitting in review of a bankruptcy appeal, a district court occupies the same position as an appellate court in review of a lower court

decision.  28 U.S.C. § 158(c)(2).

The Court reviews a grant of summary judgment de novo, applying the same standards as the bankruptcy court.  See Jenkins v. C.R.E.S. Mgmt., L.L.C., 811 F.3d 753, 756 (5th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; see also Fed. R. Bankr. P. 7056 ("Rule 56 F.R. Civ. P. applies in adversary proceedings . . . .").  The Court must construe all facts and inferences in the light most favorable to the non-movant.  Jenkins, 811 F.3d at 756.  The Court reviews a decision not to dismiss an action for failure to join an indispensable party pursuant to Federal Rule of Civil Procedure 19 for abuse of discretion.  BroadStar Wind Systems Group Ltd. Liability Co. v. Stephens, 459 Fed. Appx. 351, 357 (5th Cir. 2012).

### III.  Analysis

#### A.  Summary Judgment

Rosbottom argues the bankruptcy court erred in holding that his 1999 donation violated article 2377 because the four 1999 instruments, when read together, show that Rosbottom and Fox consented to one donation of the entirety of the Railsback Property–rather than two donations of their respective halves in the property–which is a valid act under Louisiana community property law as long as both spouses consent to the donation.  Rosbottom further argues that even if the capacities in which he and Fox signed the donations deprive them of sufficient indicia of such consent, for two reasons Schiff and Fox still cannot seek to annul the donations: (1) any such claim has prescribed and (2)

Rosbottom and Fox cured any defect in the 1999 instruments by confirming the 1999 donations through their signed notations on the 2005 bill of sale.

In Louisiana, a spouse subject to a community property regime "may not alienate, encumber, or lease to a third person his undivided interest in the community or in particular things of the community prior to the termination of the regime." La. Civ. Code art. 2337 (2016). This prohibition applies even when both spouses consent to the alienation of one spouse's undivided interest. Id. cmt. b. Furthermore, a transaction fitting this description is an absolute nullity under Louisiana law, id., meaning that it has no effect at any time because it violates a rule of public order, id. arts. 2030, 2033. Absolute nullities cannot be confirmed and do not prescribe. Id.; see generally Ronald J. Scalise, Jr., Rethinking the Doctrine of Nullity, 74 La. L. Rev. 663, 672 (2014) (providing an overview of the doctrine in Louisiana). Observation of the larger design of Louisiana's community property regime suggests that a spouse's alienation of his undivided half in any community property would violate "a rule of public order" by incorporating a non-spouse into a legal regime that is otherwise reserved only to spouses. See La. Civ. Code arts. 2334, 2336 & cmts. b-c.

Spouses subject to Louisiana's community property regime are free, however, to alienate, encumber, or lease both of their community interests in immovable community property as long as they both consent to that act. Id. arts. 2346-2347. Spouses may also donate both of their interests in community property to a third party if there is joint consent. Id. art. 2349. Judicial approval is not required for either act. Id. arts. 2346-

2347, 2349. And transferring a community immovable or donating community property without the consent of both parties is a relative nullity, not an absolute nullity. Id. art. 2353. A relative nullity may be confirmed and prescribes after five years. Id. arts. 2031-2032.

Rosbottom first argues that the 1999 donations alienated the entirety of the Railsback Property, rather than his and Fox's constituent shares in the property, and they therefore constituted valid donations under article 2347. Schiff and Fox argue the donations' use of the language "undivided one half interest in [the Railsback Property]" is dispositive proof that they violated article 2337. Record Document 15, pp. 23-24.

As a threshold matter, Rosbottom is correct in asserting that the Court should construe the four 1999 instruments as a single transaction. In Louisiana, agreements that are executed by the same parties on the same date and concern the same subject matter should be construed as a single agreement. Staple Cotton Co-op Ass'n v. Pickett, 326 So. 2d 337, 614 (La. 1976). Here, the four 1999 instruments were executed by the same parties on the same date and generally describe the same subject matter, namely, the transfer of the Railsback Property from the Rosbottom and Fox community to the two trusts. The Court will therefore construe the four 1999 instruments as a single transaction. See id.

Applying this interpretation canon, Rosbottom's and Fox's donations did not violate article 2337 because together the donations formed a single, valid donation of the entire Railsback Property. See La. Civ. Code arts. 2346-2347, 2349. Reading the language cited

by Schiff and Fox in isolation, the Rosbottom donation would have attempted to alienate his undivided interest in community property, a violation of article 2337. But set in the larger context of all four 1999 instruments, the language did not alienate an undivided interest in community property because Fox simultaneously alienated the other interest in that property, disposing of the entire community property at once. Before the 1999 instruments were executed, the Railsback Property was the community property of Rosbottom and Fox; after the instruments were executed, it became separate property of the Rosbottom and Fox Trusts; at no point was it the community property of the Rosbottom or Fox Trusts. The 1999 instruments thus never created the situation that article 2337 forbids: a non-spouse entering a community property regime. Id. arts. 2334, 2336 & cmts. b-c, 2337 & cmt. b. Consequently, the 1999 donations did not violate article 2337 by alienating either Rosbottom's or Fox's undivided interest in the Railsback Property.

Instead, Rosbottom and Fox effectively executed a single donation of the Railsback Property pursuant to articles 2346, 2347, and 2349. Those codal provisions enabled Rosbottom and Fox to donate the entire Railsback Property without limitation to the number of donees. See La. Civ. Code art. 2346-2347, 2349. By simultaneously donating both Rosbottom's and Fox's interests in the Railsback Property, the 1999 donations effectively became a single donation of the entire Railsback Property to two separate entities, the Rosbottom and Fox Trusts. See id. The 1999 donations therefore validly donated the Railsback Property as long as both Rosbottom and Fox consented to the

donation.

On this issue, the Plaintiffs below made much of the fact that the spouses did not both sign each donation in their individual capacities. This argument lacks merit because it again does not take into account the unified nature of the donations. Together, the donations contain the signatures of both Fox and Rosbottom individually as donors and their signatures on behalf of the respective trusts as donees. Thus, taking the two donations as a whole, see Staple Cotton, 326 So. 2d at 614, the signatures on the donations show that Fox and Rosbottom consented in donating the Railsback Property and that the Fox Trust and Rosbottom Trust consented in receiving that donation. The donation of the Railsback Property from the community of Fox and Rosbottom to the Fox and Rosbottom Trusts was therefore both validly given and validly accepted and did not violate the consent requirements of either article 2347 or 2349.

Even if the failure of both Fox and Rosbottom to sign each donation left Fox's consent in doubt, Rosbottom argues that Fox's ensuing conduct shows that she consented to the separation and alienation of the Railsback Property. The Court agrees. When interpreting an agreement under Louisiana law, a "doubtful provision must be interpreted in light of . . . the conduct of the parties before and after the formation of the contract . . . ." Id. art. 2053. Fox took half of the proceeds from the 2005 sale of the Railsback Property and placed them in a Fox Trust bank account. She later used those funds to help purchase the Normandy Property. Although, as the bankruptcy court noted, these facts do not give rise to the equitable defense of unclean hands, they do show that the intent

of Fox in executing the 1999 agreements was to transfer the Railsback Property from the community to two separate trusts.[6] Fox's post-1999 conduct therefore shows her consent to the 1999 donation of the Railsback Property.

Next, Rosbottom argues that even if the 1999 instruments are ambiguous as to Fox's consent and Fox's later conduct did not otherwise indicate consent, any claim to annul the Rosbottom donation has prescribed.[7] The Court again agrees. An action to annul a relatively null contract prescribes "five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." Id. art. 2032. Schiff and Fox contend that prescription does not begin to run until the nullity ceases, that is, until Fox consents. But, as Rosbottom notes, this approach would mean that a claim for a lack of spousal consent under articles 2347 or 2349 could never prescribe: if there is no consent, then prescription never begins to run, and if there is consent, then there is no claim. Schiff and Fox's approach would therefore render article 2553, which provides that a violation of article 2347 or 2349 is a relative nullity, ineffectual, and thereby violate the basic tenet of statutory interpretation that

---

[6] The Court recognizes that Rosbottom has alleged many other post-1999 instances of Fox relying on the existence of the Fox and Rosbottom Trusts. Those allegations, however, were never put before the bankruptcy court as competent summary judgment evidence, a shortcoming that Fox noted at the bankruptcy court hearing. See Record Document 6, p. 33.

[7] Relying on the position that the donations violated article 2337 and were an absolute nullity, Schiff and Fox assert that Rosbottom's prescription argument lacks merit because absolute nullities do not prescribe and his argument concerning Fox's post-1999 conduct lacks merit because no amount of consent can cure a violation of article 2337. The Court's determination that the 1999 donations were not an absolute nullity moots these responses.

courts are bound to give effect to all words in a statute where possible. See Boudreaux v. Louisiana Dep't of Pub. Safety & Corr., 2012-0239 (La. 10/16/12), 101 So. 3d 22, 26. Prescription therefore begins to run for an action to annul a transfer of community property for lack of spousal consent when the spouse discovers that the community property was transferred without her consent. Signing the 1999 instruments–no matter the capacity in which she did it–alone would have given Fox notice that the Railsback Property was no longer community property. If she were aware of its contents, the March 17, 2005, letter from the title insurance attorney would have put her on notice that the status of the Railsback Property as community property was uncertain. The same is true for her signing the 2005 bill of sale for the Railsback Property in both her capacity as trustee of the Fox and Rosbottom Trusts and her individual capacity. Schiff and Fox commenced this suit on December 23, 2013. Thus, more than five years elapsed between Fox's purported discovery that Rosbottom alienated his share of the Railsback Property without her consent and the time she and Schiff asserted their claim to recover it. Consequently, their claim has prescribed. See id.

Finally, Rosbottom argues that he and Fox ratified the 1999 donations by signing the 2005 bill of sale in both their individual and trustee capacities. In response, Schiff and Fox argue that signing the bill of sale in their individual capacities cured the 2005 sale, not the 1999 donations. Here the Court agrees with Schiff and Fox. The letter from the title insurance attorney indicates that some of the parties to that sale believed that because of the signature issue on the 1999 donations, the Rosbottom and Fox Trusts might not be

able to convey just title to the buyers. Thus, the need for Rosbottom and Fox to sign the 2005 bill of sale in their individual capacities and, in doing so, "convey any interest that they may have in [the Railsback Property]" attempted to cure a perceived defect in the 2005 sale of the Railsback Property to a third party, not in the 1999 donations. Thus, Rosbottom and Fox did not confirm the 1999 donations through their notations and signatures on the 2005 bill of sale. Nevertheless, for the other reasons stated above, the bankruptcy court erred in holding that the 1999 donations violated article 2377 of the Louisiana Civil Code.

B. <u>Joinder of Rosbottom's Children under Rule 19</u>

Rosbottom contends that the bankruptcy court abused its discretion in ruling that his children were not required parties under Rule 19. He argues that his children are successive, rather than contingent, beneficiaries, and that even if his children were contingent beneficiaries, their interest is still strong enough to compel joinder under Rule 19. Schiff and Fox argue that the bankruptcy court was well within its discretion in finding that the children were not required parties under Rule 19 because the interests of the trustees and beneficiaries of the purported Rosbottom trust align in this matter and Rosbottom, as trustee, can adequately represent the interests of his children (whether they be contingent or successive beneficiaries).[8]

Rule 19 requires the joinder of a person where, inter alia, "that person claims an

---

[8] Rosbottom also argues on appeal that the bankruptcy court abused its discretion in finding that the nonexistence of the Rosbottom Trust foreclosed the children's joinder. By reversing the bankruptcy court's holding that the 1999 donations were absolute nullities, the Court has rendered this argument moot.

interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).  Given Rule 19's roots in equity and its mandate to consider the "practical" implications of failing to join a party,[9] "[e]quitable considerations govern the disposition of a litigant's argument that someone is an indispensable party." United States v. Sabine Shell, Inc., 674 F.2d 480, 482 (5th Cir. 1982).  Generally, courts have long required the joinder of beneficiaries in a suit seeking to terminate a trust or deprive the trust of trust property.  See Markham v. Fay, 74 F.3d 1347, 1355 (1st Cir. 1996) (citing Carey v. Brown, 92 U.S. 171, 172 (1875)).  The exception to this general rule lies where the trustee can represent the interests of the beneficiaries fully and without conflict.  Id. (citing 3A James W. Moore, Moore's Federal Practice ¶ 19.08 at 175–76 (2d ed. 1985)).

Rosbottom contends that he cannot fully represent the interests of his children because he is defending this suit pro se from a federal penitentiary.  The Court disagrees. The quality of Rosbottom's briefs to the Court, which easily meet the standards expected of a licensed attorney, attest to his competence as an advocate.  Equities also weigh in favor of not requiring the children's joinder.  As Fox and Schiff argue, Rosbottom's bankruptcy has been open for seven years and it is difficult to conceive at this juncture how the children's joinder would aid in Rosbottom's defense of this adversary proceeding. The Plaintiffs' claim turns on the interpretation of instruments that are effectively already

---

[9] See Schutten v. Shell Oil Co., 421 F.2d 869, 872-73 (5th Cir. 1970).

before the Court and law that Rosbottom has already aptly cited to the Court. And even if there were additional relevant documents, they would not be in the children's custody because Rosbottom and Fox were–or would be–the parties to execute any instruments affecting their community property. Thus, the children's absence from this suit does not, "as a practical matter," impair their ability to protect their interest in this suit. See Fed. R. Civ. P. 19(a)(1). The bankruptcy court therefore did not abuse its discretion in ruling that the children were not required parties under Rule 19.

### IV. Conclusion

For the foregoing reasons, the Court **REVERSES** the bankruptcy court's grant of summary judgment, **AFFIRMS** its denial of 12(b)(7) dismissal, and **REMANDS** the case for further proceedings consistent with this opinion.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of June, 2016.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE